[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT
In this case, plaintiff Richard B. Polivy has sued the defendants, Air One, Inc. ("Air One"), Brainard Flight Services, Inc. ("Brainard") and Arstol, Inc. ("Arstol"),inter alia, for a declaration of their respective legal rights in and to a certain Rockwell Commander aircraft (the "Commander") in which both the plaintiff and defendant Arstol, as successor-in-interest to defendant Air One, have perfected security interests. The case is now before the Court for decision on two related motions: the joint motion for partial summary judgment which was filed by defendants Air One and Arstol on September 30, 1994; and the plaintiff's cross motion for partial summary judgment, which was filed on November 10, 1994.
The central issue raised by these motions is whether defendant Arstol's admittedly first-filed security interest in the Commander, which was recorded with the Federal Aviation Administration ("FAA") on March 15, 1993, extends not only to the airframe of the Commander, but to its engine, propeller, equipment and accessories as well. Claiming that it does not, the plaintiff argues: first, that the FAA does not permit the separate recording of security interests in aircraft engines, propellers, equipment or accessories of the types here at issue; and second, that the recorded security agreement under which such a security interest is now claimed to have been perfected did not adequately inform interested persons that it applied to said engine, propeller, equipment or accessories. On that basis, the plaintiff contends that his own security interest in the Commander — which was duly perfected on October 8, 1993 by the recording, with the Connecticut Secretary of the State of a Uniform Commercial Code Financing Statement expressly applying to the entire Commander, including, in particular, its engine, equipment and accessories[1] — must be given first-priority status as to all parts of the Commander except its airframe.
The defendants disagree. Though they concede that the plaintiff has a valid, perfected security interest in all parts of the Commander, including its engine, propeller, equipment and accessories, they argue that defendant CT Page 6959 Arstol's first-filed security interest must be given first-priority status as to the entire Commander because it applies, both expressly and by necessary. implication, to each of its integral parts.
The parties' motions have been fully briefed and argued based upon the following, undisputed facts.
Facts
On December 1, 1992, defendant Air One sold three airplanes to defendant Brainard in exchange for a $65,000 promissory note (the "Air One Note"). The three airplanes were: (a) a Cessna 150, bearing serial number 15075208 and having FAA registration number N11124 (the "Cessna"); (b) a Piper Warrior, bearing serial number 77-16099 and having FAA registration number N2293Q (the "Piper"); and (c) the above-referenced Commander, bearing serial number 81 and having FAA registration number N1O81J.
To secure the Air One Note, defendant Brainard executed three separate aircraft security agreements in favor of defendant Air One. These security agreements — one each for the Cessna, the Piper and the Commander — were all prepared on February 22, 1993, each on an FAA AC Form 8050-98. Each was then filed with the FAA, in accordance with the following schedule: (a) on March 10, 1993, the Cessna Security Agreement was filed as conveyance number JJ07197; (b) on March 11, 1993, the Piper Security Agreement was filed as conveyance number T43915; and (c) on March 15, 1993, the Commander Security Agreement was filed as conveyance number T43942.
The Commander Security Agreement, in which defendant Brainard granted defendant Air One a security interest in the Commander, reads in part as follows:
Date: 02-22-93
 Complete description of collateral being mortgaged:
 AIRCRAFT (FAA registration number, manufacturer, model, and serial number). CT Page 6960
 NIO81J, Rockwell Commander 112, S/N: 81
 NOTICE: Engines less than 750 horsepower and propellers not capable of absorbing 750 or more rated shaft horsepower are not eligible for recording
 ENGINES (manufacturer, model, and serial number):
 PROPELLERS (manufacturer, model, and serial number):
 SPARE PARTS LOCATIONS (air carrier's name, city, and state):
 together with all equipment and accessories attached thereto or used in connection therewith, including engines of 750 horsepower, or the equivalent, and propellers capable of absorbing 750 rated takeoff shaft horsepower, described above, all of which are included in the term aircraft as used herein.
At all times relevant to this action, the Commander has been a four-place, low-wing, all-metal, retractable-gear aircraft powered by a four-cylinder, fuel-injected Lycoming 10-360-CI-D6 engine rated to produce 200 brake horsepower at 2700 revolutions per minute. At all such relevant times, moreover, it has been equipped with a Hartzell #HC-E2yr-1BF/F7666A, all-metal, constant-speed propeller. The propeller is not capable of absorbing 750 or more rated takeoff shaft horsepower.
On August 11, 1993, defendant Brainard executed a promissory note in favor of plaintiff Richard B. Polivy in the original principal amount of $20,000. As security for this note (the "Polivy Note"), Brainard also executed an aircraft mortgage (the "Polivy Mortgage") and a Uniform CT Page 6961 Commercial Code Financing Statement (the "Polivy UCC") in favor of plaintiff Polivy.
The Polivy Mortgage grants the plaintiff a lien and security interest in
 [t]he aircraft, together with all appliances, equipment and instruments (including, without limitation, avionics, radio and radar) from time to time `thereto belonging and installed in or appurtenant to the aircraft (the "Aircraft"), together with such installed or appurtenant items and any Engine installed thereon, being herein called the "Aircraft" described in Exhibit A annexed hereto and made a part hereof . . . .
Exhibit A to the Polivy Mortgage, in turn, describes the subject aircraft as a "1977 Rockwell Commander having Manufacturer's Serial No. 81 and U.S. Registration No. NIO81J, Model 112. The "Aircraft" shall have (a) new Lycoming 360 engine having the following Manufacturer's Serial No. L-9294-51A, Model No. 10-360-C1-D6 . . . ".
The Polivy UCC describes the collateral as follows:
 1977 Rockwell Commander General Aviation Aircraft; Serial Number 81, Registration Number NIO81J; Model No. 10-360-C1D6. Lycoming Engine. Aircraft engine serial number L 9294-51A. The security interest in the aircraft engine is a purchase money security interest.
The plaintiff recorded the Polivy UCC with the Connecticut Secretary of the State on October 8, 1993, under filing number 1031052. He then recorded the Polivy Mortgage with the FAA on October 28, 1993, as document number UU 007496.
Prior to February 14, 1994, defendant Brainard CT Page 6962 defaulted on its obligations to plaintiff Polivy and defendant Air One under the Polivy Note and the Air One Note, respectively. Therefore, on or about February 14, 1994, plaintiff Polivy commenced this action against defendants Air One and Brainard, seeking to replevy the Commander in satisfaction of Brainard's unpaid debt on the Polivy Note.
After the commencement of this action, defendant Air One assigned its interest in and to the Air One Note, the Commander Security Agreement, the Piper Security Agreement and the Cessna Security Agreement to Capital Assistance Corporation ("CAC"). CAC thereafter assigned its interest in and to the aforementioned Note and Security Agreements to defendant Arstol, a Connecticut corporation which was formed and started on February 22, 1994. As consideration for the Note and Security Agreements, defendant Arstol executed a demand note in the principal amount of $50,000 in favor of CAC. Following these transactions, plaintiff Polivy amended his complaint in this action to add defendant Arstol as a party defendant and to seek a declaratory judgment on the issues of which party has a priority security interest in the engine, the propeller and the equipment of the Commander.
Defendant Brainard is not an "air carrier," as defined under the Federal Aviation Act of 1958 or the regulations promulgated thereunder.
Defendant Arstol claims to have repossessed the Commander pursuant to a written communication addressed to Brainard, dated March 11, 1994. Plaintiff Polivy claims to have repossessed the Commander pursuant to a written communication addressed to Brainard, Air One and Arstol, dated March 24, 1994. The Commander is currently hangared at Brainard Field pursuant to an order of this Court (O'Neill, J.).
Law
 I
Plaintiff Polivy initially claims a first-priority security interest in the Commander's engine, propeller, equipment and accessories based on an application of the CT Page 6963 Federal Aviation Act of 1958, 49 U.S.C. § 1401 et seq.
(1994) [hereinafter the "FAA Act"], and the Connecticut Uniform Commercial Code, Conn. Gen. Stars. §§ 42a-9-101 etseq. (1994) [hereinafter the "UCC"],[2] to the Commander security Agreement, the Polivy Mortgage and the Polivy UCC. The essential foundation for the plaintiff's statutory claims is as follows:
Transactions of the type here at issue are governed generally by the Connecticut Uniform Commercial Code. UCC § 9-102 provides that
 [e]xcept as otherwise provided in section [9-104], this article applies (a) to any transaction which is intended to create a security interest in personal property . . . . In Connecticut, the Uniform Commercial Code is codified in Title 42 of the Connecticut General Statutes. UCC § 9-102. For the sake of simplicity, this option will refer to provisions of the Connecticut UCC by reference to their numbers in the UCC, not to their Connecticut statutory citations.
UCC § 1-201(37) defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." Under these definitions, the transactions between defendants Brainard and Air One involved the extension of credit in connection with the acquisition by Brainard of the Commander, the Piper and the Cessna. The transaction between defendant Brainard and plaintiff Polivy also involved an advance of funds, in the form of a secured loan. In both transactions, defendant Brainard granted an interest in personal property to secure payment of its financial obligations. The granting of such interests clearly brought defendant Brainard's transactions with plaintiff Polivy and defendant Air One within the general scope of UCC Article 9.
By its terms, UCC § 9-104 defers the application of its provisions in situations involving security interests subject to federal law. Such deferral, however, is only CT Page 6964 made to the extent that federal statutes govern the rights of parties and third parties affected by transactions involving particular types of property.
One federal statute which partially preempts the UCC is the FAA Act. It establishes, inter alia, an exclusive federal registry for the filing and recording of all
 conveyances affecting title to or interests in any civil aircraft of the United States or any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any specifically identified aircraft engine or engines of seven hundred and fifty or more rated takeoff horsepower for each such engine or the equivalent of such horsepower or any specifically identified aircraft propeller capable of absorbing seven hundred and fifty or more rated takeoff shaft horsepower, and also any assignment or amendment thereof or supplement thereto.
FAA Act, 49 U.S.C. § 1403 (a)(1) (1994). So drafted, the FAA Act does not preempt the UCC as to all aircraft, aircraft engines or propellers. Instead, "to the extent that the [FAA] does not regulate the rights to and third parties affected by such, security interests in aircraft remain subject to [Article 9]." UCC § 9-104, comment (1994).
 II
Against this background, the plaintiff concedes, as he must, that the FAA central registry in Oklahoma City, Oklahoma is the sole facility in this country for the registration of United States civil aircraft, the recordation of title to such aircraft, and the recordation of conveyances of such aircraft, including the granting of security interests therein. He further concedes that that same facility is the only location at which similar CT Page 6965 interests may be filed and recorded either for specifically identified aircraft engines of 750 or more rated takeoff horsepower or the equivalent or for specifically identified propellers capable of absorbing 750 or more rated takeoff shaft horsepower.
By the same token, he argues, the FAA central registry is not the proper place to record security interests in aircraft engines of less than 750 rated takeoff horsepower or the equivalent or in propellers of less than 750 rated takeoff shaft horsepower, since such engines and propellers fall outside the exclusive power range of the engines and propellers to which the FAA Act applies. Security interests in such less powerful engines or propellers must therefore be recorded, claims the plaintiff, with the Connecticut Secretary of the State under the provisions of the Connecticut UCC.
In this case, argues the plaintiff, no security interest in the engine or propeller of the subject aircraft could be perfected unless it were filed with the Connecticut Secretary of the State. This, he claims, is so because neither the engine nor the propeller of the Commander meets the minimum power requirements for separate recordation with the FAA under 49 U.S.C. § 1403 (a) (1994). Therefore, concludes the plaintiff, his own duly perfected security interest in the entire Commander, was was filed with the Secretary of the State on October 8, 1993, must be given first-priority status as to the Commander's engine and propeller, since it is the only lawfully recorded security interest in that property.[3]
The defendants counter this argument by insisting that the plaintiff has misread and/or misunderstood the pertinent provisions of the FAA Act, and in so doing has drawn a false dichotomy between an aircraft and the engine and propeller which power it and enable it to fly. Properly read and understood, claim the defendants, the FAA Act calls for the registration in Oklahoma City of all
civil aircraft, regardless of the rated horsepower of their engines or propellers. Furthermore, they claim, any security interest in a civil aircraft logically and legally extends to every part or portion thereof, including any engine or propeller installed in it and all equipment or other accessories attached to it or used in its regular CT Page 6966 operation. For the following reasons, the Court is persuaded by the defendants' arguments.
Initially, the Court must note that the FAA Act provides separately for the registration of ownership interests in "civil aircraft" and in engines or propellers of 750 or more rated takeoff shaft horsepower. As defined in the FAA Act, an "aircraft" is "any contrivance used or designed for flight in the air." 49 U.S.C. § 1301(5);see also 14 C.F.R. § 1.1. Under this explicitly functional definition, a thing is simply not an aircraft, and thus is not eligible for recordation in the FAA central registry, unless it includes those essential parts or features which are used and/or designed to make it fly in the air. Where, then, an aircraft is so designed as to achieve and maintain flight in the air by the use of engine-driven propellers, both the engine and the propellers are logically and legally integral parts of the aircraft itself. Therefore, a security interest in a propeller-driven aircraft necessarily extends to and includes both its engine and its propellers in addition to its airframe.
The FAA Act, moreover, requires the central registration of security interests in all civil aircraft, regardless of the rated takeoff horsepower of their engines and/or propellers. This conclusion flows from a simple examination of the parallel registration provision in 49 U.S.C. § 1403 (a)(1) and (2).
Subdivision (1) of 49 U.S.C. § 1403(a) calls for the registration of "any civil aircraft." Sub-division (2) of 49 U.S.C. § 1403 (a), by contrast, calls for the registration of any specifically identified engine or propeller with at least 750 rated takeoff shaft horsepower. To state the obvious, whereas subdivision (1) contains no restrictions whatsoever, subdivision (2) contains significant restrictions upon the size of engines and propellers which may be separately registered thereunder. Thus, though subdivision (1) could easily have been so written as to prevent the separate registration of propeller-driven aircraft with engines and/or propellers below a pre-established power rating, it was not so restricted. What the drafters of the FAA Act plainly intended was therefore that all civil aircraft, without exception, be included in CT Page 6967 the FAA central registry.
The plaintiff further argues that the 750-rated horsepower requirement for separate registration of engines and propellers was built into the FAA Act for the special purpose of "facilitat[ing] the leasing or separate financing of propellers and aircraft engines needed to modernize the Nation's civil aircraft fleet." 1959 U.S.C.C.A.N. 1762. In enacting this limitation, the Congress further noted that "propellers for modern transport-type aircraft are complex and expensive and usually are readily interchangeable from one engine to another." Id.
From this legislative history, the plaintiff would have this Court conclude that by passing a new provision for separate registration of larger engines and propellers sold and financed separately from aircraft, Congress intended to forbid the recordation of smaller engines and propellers which were already installed in new or existing aircraft. This, however, is illogical for several reasons. First, subdivision (2) of 49 U.S.C. § 1403(a) says no such thing. For the reasons previously stated, it in no way mentions or affects the entirely separate recordation provision for security interests in "any civil aircraft" in subdivision (1) of the statute.
Secondly, such a reading of the statute would have radically altered the pre-existing practice of allowing for the filing of security interests in entire aircraft, including their engines, propellers, equipment and other installed appurtenances, under the Civil Aeronautics Act of 1938. Such a change cannot be inferred from a legislative history which is utterly silent on the subject.
Thirdly, and perhaps most importantly, the very logic of the Congress, as described by the plaintiff, is inconsistent with his fundamental position on this matter. If Congress' understanding was that expensive engines and propellers would shortly be produced and sold asreplacement parts for existing aircraft then it further understood that these parts would be sold separately from any aircraft in which they might eventually be installed. Financing for the purchase of such parts would thus have to be procured separately from any financing for the original CT Page 6968 aircraft, which would naturally extend to its original engines and propellers. The new law was therefore not designed or intended to promote separate financing of any engine or propeller which was already part of an existing aircraft. Instead, it was designed and intended to permit the separate financing of after-acquired engines and propellers.[4]
Fourthly, in creating a central national registry for aircraft, aircraft engines and propellers, Congress cannot reasonably be thought to have desired the kind of disorganized, fragmented filing system which would result from the plaintiff's construction of the FAA Act's recording requirements. If the plaintiff's view were accepted, any person owning a civil aircraft with sub-750 horsepower engines and/or propellers installed in it would be required to maintain separate security interests in different parts of a single aircraft — one for the airframe and others for any sub-750 horsepower engines and propellers installed in it. The former, of course, would by law be required to be filed in Oklahoma City as part of the federal registry, while the latter would have to be filed in one of the fifty states. Such a system would be terribly cumbersome and confusing. Moreover, it might mislead vendors or purchasers of aircraft to lose their ownership interests in parts of their own aircraft through sheer inadvertence. Congress cannot be thought to have believed that such a system would facilitate the speedy, efficient development of our civil air fleet.
The plaintiff's final argument on this subject is that the federal regulations promulgated under 49 U.S.C. § 1403 support the conclusion "that interests in aircraft engines and propellers below the 750 horsepower threshold are not eligible for filing under the federal statute, and must therefore be filed in accordance with state law. See
14 C.F.R. § 49 et seq. (1994)." Plaintiff's Memorandum, p. 22. On this score, the plaintiff cites the following passage from C.F.R. § 49.1:
§ 49.1 Applicability.
 (a) This part applies to the recording of certain conveyances affecting title to, or any interest in — CT Page 6969
 (1) Any aircraft registered under section 501 of the Federal Aviation Act of 1958 (49 U.S.C. § 1401);
 (2) Any specifically identified aircraft engine of 750 or more rated takeoff horsepower, or the equivalent of that horsepower;
 (3) Any specifically identified aircraft propeller able to absorb 750 or more rated takeoff shaft horsepower . . . .
Under this provision, which closely tracks the statute, the plaintiff claims that the FAA clearly signalled its understanding that only specifically identified aircraft engines and propellers that meet the 750 horsepower threshold are eligible for recording with the FAA.
This argument, like the plaintiff's other arguments on this subject, misses the mark for the simple reason that it erroneously presupposes that the only valid security interest in an aircraft engine or propeller is one that is separately recorded with the FAA. Though it is doubtless true that no separate security interest in any aircraft engine or propeller with less than 750 rated takeoff horsepower may be filed with the FAA, it is also true that a duly filed security interest in any civil aircraft extends to every part thereof, including, especially, its engines and propellers, unless a contrary intent clearly appears on the face of the recorded security instruments.[5]
In conclusion, since the plaintiff's interpretation of the FAA Act is both by the language of the statute and fundamentally at odds with the purposes of these who drafted it, it must be rejected.
 III
By a similar logic, the plaintiff claims that his duly recorded security interest in the equipment and accessories of the Commander must be accorded first-priority status because it is the only perfected security interest in such CT Page 6970 property. Insisting that the FAA Act makes no provision for the recordation of security interests in equipment or accessories, he insists that Arstol's perfected security interest in the Commander cannot lawfully extend to those items.
The plaintiff first notes that the words "equipment" and "accessories" are not separately defined in the FAA Act. They are used, however, in the statutory definition of the term "appliances," which provides as follows:
 (12) "Appliances" means instruments, equipment, apparatus, parts, appurtenances, or accessories, of whatever description, which are used or are capable of being or intended to be used, in the navigation, operation or control of aircraft in flight (including parachutes and including communication equipment and any other mechanism or mechanisms installed in or attached to aircraft during flight) and which are not a part or parts of aircraft, aircraft engines or propellers.
49 U.S.C. § 1301 (12).
"Appliances", in turn, can be separately registered at the FAA central registry in Oklahoma City under 49 U.S.C. § 1403 (a)(3), which provides as follows:
 (a) The Administrator [Secretary of Transportation] shall establish and maintain a system for the recording of each and all of the following:
* * *
 (3) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the CT Page 6971 title to, or any interest in, any aircraft engines, propellers, or appliances maintained by or on behalf of an air carrier certificated under Section 604(b) of this Act for installation or use in aircraft, aircraft engines, or propellers, or any spare parts maintained by or on behalf of such an air carrier, which instrument need only describe generally by types the engines, propellers, appliances, and spare parts covered thereby and designate the location or locations thereof; and also any assignment or amendment thereof or supplement thereto.
Since the federal recordation of security interests in "appliances", including "equipment" and "accessories", is statutorily limited to "air carriers", and none of the defendants is an air carrier, the plaintiff contends that none of the security interests they have filed with the FAA for the subject Commander extends to any of the Commander's equipment or accessories.
The defendants respond to this argument in much the same way that they responded to the plaintiff's above-described claim that a duly filed security interest in a civil aircraft with sub-750 horsepower engines and/or propellers does not extend to such engines or propellers. Though they concede that separate filings of security interests in aircraft equipment, accessories and other appliances cannot be made at the FAA central registry in Oklahoma City except by an air carrier, they argue that any duly recorded security interest in a civil aircraft, under 49 U.S.C. § 1403 (a)(1), extends by necessary implication to all equipment, accessories and other apparatus which have been so installed in or attached to a registered aircraft as to become an integral part thereof. For the following reason, this Court agrees.
The defendants first note that when any piece of equipment or accessory is attached to or installed in an aircraft, engine or propeller, it becomes, in common logic and expectation, an undifferentiated part of said aircraft, CT Page 6972 engine or propeller. When the aircraft, engine or propeller is thereafter bought or sold, its attached equipment and accessories are typically bought and sold along with it, for ordinarily their installation has made them essential to the functioning or operation of the aircraft, engine or propeller.
The logic of this argument is supported by the structure of the very statutory sections on which the plaintiff rests his claim. First, under the statutory definition of "appliances", any accessory or piece of equipment that might otherwise be considered an "appliance" loses its status as an appliance once it is made "a part of any aircraft, aircraft engine or propeller." 49 U.S.C. § 1403 (a)(3). By the same token, of course, any uninstalled accessory or piece of equipment that an air carrier might otherwise register with the FAA as an appliance ceases to be eligible for such registration once it is installed in and made a part of any aircraft, aircraft engine or propeller. Logically, this is so because once any piece of equipment, accessory or other appliance becomes a part of any aircraft, aircraft engine or propeller, it no longer has a separate existence form the greater unit or entity of which it has become a part. Though such parts, once they are installed, are no longer "appliances," they are covered by any security interest in the aircraft, aircraft engine or propeller in which they are installed.
Supportive of this construction are the statutory definitions of the terms "aircraft engine" and "propeller". 49 U.S.C. § 1301 (6) defines "aircraft engine as follows:
 (6) "Aircraft engine" means an engine used, or intended to be used, for propulsion of aircraft and includes all parts, appurtenances and accessories thereof other than propellers.
49 U.S.C. § 1301 (30), in turn, provides that a
 (30) "Propeller" includes all parts, appurtenances and accessories thereof. CT Page 6973
Together, these definitions lend strong support to the defendants' position, for they explicitly provide that once an accessory, piece of equipment or other "appliance" is installed in and made apart of any engine or propeller, it is to be treated, for the purpose of registering security interests with the FAA, as an integral part of the engine or propeller in which it has been installed. As such, of course, it is fully covered by any duly filed security interest in said engine or propeller.[6]
By a parallel logic, any accessory, piece of equipment or other "appliance" which is installed in and made a part of any civil aircraft must be considered a part of that aircraft for the purposes of 49 U.S.C. § 1403 (a)(1). Because its installation in the aircraft makes its existence indistinguishable from that of the greater entity of which it has been made a part, any security interest in the greater entity must logically extend to it as well.
Of final note and interest on the question her presented is the text of the official government form on which the defendants recorded their security interest in the Commander with the FAA. The form, as noted on page 4 of this Memorandum of Decision, was an FAA AC Form 8050-98, which was filled out as follows:
Date: 02-22-93
 Complete description of collateral being mortgaged:
 AIRCRAFT (FAA registration number, manufacturer, model, and serial number).
 N1O81J, Rockwell Commander 112, S/N: 81
 NOTICE: Engines less than 750 horsepower and propellers not capable of absorbing 750 or more rated shaft horsepower are not eligible for recording CT Page 6974
 ENGINES (manufacturer, model, and serial number):
 PROPELLERS (manufacturer, model, and serial number):
 SPARE PARTS LOCATIONS (air carrier's name, city, and state):
 together with all equipment and accessories attached thereto or used in connection therewith, including engines of 750 horsepower, or the equivalent, and propellers capable of absorbing 750 rated takeoff shaft horsepower, described above, all of which are included in the term aircraft as used herein.
Id. (Emphasis supplied).
By it own terms, this form, with which the defendants attempted to perfect their security interest in the entire Commander, embraces, includes and extends to "all equipment and accessories attached thereto or used in connection therewith[.]" Id. (Emphasis supplied). That the United States government agency responsible for establishing and maintaining the national system for registering security interests in aircraft itself construes the term "aircraft" to include all equipment and accessories attached thereto or used in connection therewith is an important indicator as to the true meaning of that term. Confirmed, as it is, by the foregoing analysis of the relevant statutes, it persuades this Court that the defendants' first-filed security interest in the Commander extends not only to its airframe and its engines and propellers, but to all of the equipment and accessories attached thereto or used in connection therewith.
 IV
The plaintiff's final argument on these motions is that even if the defendants do have a first-priority security interest in the entire Commander, including its engines, propellers, and attached equipment and CT Page 6975 accessories, its interest should yield to the plaintiff's own duly perfected security interest because its filings do not give adequate notice to third parties, including the plaintiff, as to the nature and extent of that interest. Pointing particularly to the text of the above-described United States government form with which the defendants recorded their security interest, the plaintiff argues that the defendants misled third parties by indicating that the "aircraft" they sought to register included "engines of 750
horsepower, or the equivalent, and propellers capable of absorbing 750 rated takeoff shaft horsepower, described above, all of the which are included in the term aircraft as used herein." This indication, argues the plaintiff, would have persuaded a reasonable reader of the registration form that the defendant's recorded security interest did not extend to any sub-750 horsepower engine or propeller which may have been attached to the aircraft or used in connection therewith.
Again, the Court disagrees. First, the form itself, as filled out by the defendants, did not explicitly exclude engines or propellers with less than 750 rated takeoff horsepower. To the contrary, it explicitly included all equipment or accessories attached to the aircraft or used in connection therewith, including, specifically engines and propellers which were specially registered in the space provided. Though no such engines or propellers were listed, it is important to note that under the 750-minimum horsepower requirements of 49 U.S.C. § 1403 (a)(2), none could have been. The spaces provided on the form were for special registration of engines and propellers with horsepower ratings at or above the statutory limit. There was simply no space provided for the separate listing of a smaller engine or propeller, as both the statute and the form made clear.
In conclusion, a reasonable reader of the form here at issue would have read it, in light of its own terms and those of the statutes it was designed to implement, to perfect a security interest in each and every part of the Commander, including all of its attached engines and propellers, regardless of their rated horsepower.
Conclusion
CT Page 6976
For the foregoing reasons, the defendants' joint motion for partial summary judgment is hereby granted and the plaintiff's cross motion for partial summary judgment is hereby denied.
Michael R. Sheldon Judge